**CHRISTOPHER D. BOYD, ISB# 9314**
**AARON J. BAZZOLI, ISB # 5512**
**BENJAMIN CRAMER, ISB # 9220**
Canyon County Prosecuting Attorney
Canyon County Courthouse
1115 Albany Street
Caldwell, Idaho 83605
Telephone: (208) 454-7391
Facsimile: (208) 455-5955
Email: pacivilmail@canyoncounty.id.gov

*Attorneys for Defendants Canyon County,*
*Sheriff Kieran Donahue*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JUANA RODRIGUEZ, et. al., | |
| Plaintiffs, | CASE NO. 1:26-CV-00075-AKB |
| v. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - DEFENDANTS CANYON COUNTY AND SHERIFF KIERAN DONAHUE** |
| KENNETH PORTER, et. al. | |
| Defendants. | |

COME NOW, Defendants, Canyon County and Canyon County Sheriff Kieran Donahue,

by and through their attorneys of record, Aaron Bazzoli, Chief Civil Deputy and Benjamin Cramer,

Civil Deputy, of the Canyon County Prosecuting Attorney's Office, and hereby moves this Court

to dismiss Plaintiffs' Complaint as to Defendants Canyon County and Sheriff Donahue under

Federal Rules of Civil Procedure 12(b)(6).

### I. INTRODUCTION

This case originates from the execution of a federal search warrant related to an illegal

gambling operation being conducted at a horserace track. Sheriff Kieran Donahue and the Canyon

County Sheriff's Office participated in the execution of the search warrant by providing security

and assisting in the detention of persons present at the racetrack while the search warrant was executed.

Plaintiffs assert claims of conspiracy to conduct unreasonable seizures under the Fourth Amendment, conspiracy to deny equal protection, conspiracy to deprive equal protection, failure to prevent deprivation of equal protection, and unreasonable seizure by Sheriff Donahue and Canyon County. However, Plaintiffs have failed to allege facts sufficient to show a planned or actual violation of their Fourth or Fourteenth Amendment rights. Moreover, Sheriff Donahue is entitled to qualified immunity because the complaint does not allege facts sufficient to show a planned or executed violation of clearly established constitutional rights that a reasonable person would have known.

To the contrary, the facts of this case, as pled by Plaintiffs, show that detention of those persons present on the premises of an illegal gambling operation during the execution of a search warrant for evidence of illegal gambling was not a violation of their rights. Even if the pleadings could support a claim that Plaintiffs' rights were violated by their detention, they have failed to show that existing precedent placed beyond debate the constitutional question of whether patrons of a racetrack, home to an unlawful gambling establishment, may lawfully be detained while officers execute a valid search warrant for evidence of illegal gambling activities at that establishment.

Alternatively, even if Plaintiffs had alleged a proper claim, they have not alleged that they were unconstitutionally detained or any violation of their rights under a County policy or decision officially adopted and promulgated by the County's officers. Therefore, Canyon County should be dismissed as a Defendant.

## II. ARGUMENT

**Introduction: Dismissal is Proper Because Plaintiffs Have Alleged Only Conclusions, Which are not Entitled to an Assumption of Truth**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint is not sufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-679. Therefore, a "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Applying these standards in this case shows that Plaintiffs have not stated a plausible claim of a constitutional violation, much less one that can overcome qualified immunity.

"To be entitled to qualified immunity at the motion to dismiss stage, an officer must show that the allegations in the complaint do not make out a violation of a constitutional right or that any such right was not clearly established at the time of the alleged misconduct." *Hampton v. California*, 83 F.4th 754, 765 (9th Cir. 2023). "The official seeking immunity bears the burden of demonstrating that immunity attaches to a particular function." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999) (citing *Burns v. Reed,* 500 U.S. 478, 486 (1991)).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). To find that a right is clearly

established, courts generally "need to identify a case where an officer acting under similar circumstances . . . was held to have violated" the Constitution. *Zorn v. Linton*, 607 U.S. ___, ___, 146 S.Ct. 926, 930 (2026). Even if not on-point, the "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd,* 563 U.S. 731, 741 (2011). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

Here, Plaintiffs' conclusory allegations do not establish a plausible claim for relief against Canyon County Defendants. Rather, they merely establish conduct that, at best, complied with constitutional standards or, at worst, was not a violation of clearly established constitutional rights.

**A.**  **Claims That Sheriff Donahue Violated Clearly Established Constitutional Rights by Planning to and Detaining Persons on the Premises of the Illegal Gambling Operation While a Search Warrant was Executed Must be Dismissed**

> *1. The Nonconclusory Facts Alleged by Plaintiffs do not Show That Their Initial Detention Violated Clearly Established Fourth Amendment Rights*

This case arises out of law enforcement from several jurisdictions coordinating and executing a judicial search warrant issued by a federal magistrate for evidence of an illegal gambling operation. The search warrant expressly included the racetrack, spectator area, and several structures located on La Catedral Arena. During the search pursuant to the warrant, Plaintiffs were detained at the racetrack and in the spectator area where the illegal gambling operation was being conducted. Because the seizures, as planned and as executed, were reasonable under at least two relevant circumstances, the counts of violation of Fourth Amendment rights (Complaint, ¶¶ 270-74) and conspiracy to violate Fourth Amendment rights (Complaint, ¶¶ 243-49) should be dismissed.

First, a person may be detained upon reasonable suspicion that he or she is involved in criminal activities. *United States v. Cortez*, 449 U.S. 411, 417 (1981) (an investigative detention is constitutionally justified by an "objective manifestation that the person stopped is, or is about to be, engaged in criminal activity"). Reasonable suspicion "arises when, based on the totality of the circumstances, the detaining officer had a particularized and objective basis for suspecting criminal wrongdoing." *D.C. v. R.W.*, 608 U.S. ___, 146 S.Ct. 1069, 1071, (No. 25–248, 2026 WL 1052344, at *2)(U.S. Apr. 20, 2026) (internal quotations omitted). The Supreme Court of the United States has "consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.'" *Navarette v. California*, 572 U.S. 393, 403 (2014) (quoting *United States v. Arvizu,* 534 U.S. 266, 277 (2002)).

Second, it is a long-standing constitutional principle that detention of people on the premises to be searched under a search warrant is constitutionally reasonable. *Michigan v. Summers*, 452 U.S. 692, 705 (1981) (issuance of a search warrant based on probable cause "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted").  Both grounds justify detention as applied in this situation.

The genesis of this case was the execution of a search warrant related to illegal gambling by several named individuals. (Complaint, ¶ 90.) Specifically, the named individuals, including the owner of the La Catedral racetrack, were conducting "an unlicensed gambling operation on horse-races at La Catedral involving parimutuel bets placed online through social media and at the racetrack." (Id., ¶ 91.) Plaintiffs also allege that "'large amounts of cash' [were] found on 'several' individuals" detained that day. (Complaint, ¶ 109.) Under this totality of circumstances, as pled by the Plaintiffs, it was (1) reasonable to suspect that observers at the racetrack were participating in

the gambling activities and (2) also reasonable to detain them corollary to executing the search warrant for evidence of illegal gambling.

The Complaint demonstrates that no Fourth Amendment violation occurred in the detention itself[1] and its non-conclusory allegations show that Canyon County officers and Sheriff Donahue are protected by qualified immunity. Given Plaintiffs' acknowledgment that (1) a federal magistrate had already found probable cause to believe that illegal gambling activities were happening at the La Catedral racetrack, (2) that the owner of the racetrack was directly involved, and (3) that the operations included taking bets from those in attendance at the races, officers had reasonable suspicion that those attending the races were possible participants in illegal activity and/or witnesses to the illegal gambling. Officers had reasonable, constitutional grounds to detain those present on the premises of the illegal gambling operation while the search warrant was being executed.

Plaintiffs' claim is that their seizure was unreasonable because "automatic detention" during the execution of the search warrant "was not permitted" and because officers lacked "reasonable suspicion" of involvement in criminal activity. (Complaint, ¶ 271.) Conclusory claims that their detention was illegal are insufficient, however. *Iqbal*, 556 U.S. at 679 (a "court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"); *Twombly*, 550 U.S. at 545 (valid complaint requires "more than labels and conclusions"). Plaintiffs cannot merely allege that their detention violated their Fourth Amendment rights. They must plead facts demonstrating that their rights were in fact violated and that the right was so clearly established that only an

---

[1] Allegations about the manner of the detention, e.g., the length of the detention, the use of zip ties, and imposing a "gratuitous burden" is addressed below. The current discussion is limited to the detention itself.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - DEFENDANTS CANYON COUNTY AND SHERIFF KIERAN DONAHUE**

incompetent officer or one acting in bad faith would not realize he was violating that right. They have failed to do so.

Plaintiffs' more specific allegations do not rescue them. For example, Plaintiffs first allege that the "search warrant concerned a narrow investigation into a non-violent crime." (Complaint, ¶¶ 88-96)(underlining, bolding, and capitalization omitted). Although the nature of the underlying crime is certainly relevant to the *execution* of the detention (such as whether use of restraints was reasonable), *Muehler v. Mena*, 544 U.S. 93, 99-100 (2005) (use of handcuffs reasonable where a search warrant was for weapons and a known gang member), it did not render the detention itself unreasonable. As shown, Plaintiffs' allegations establish that they were detained while on the premises of an illegal gambling operation during execution of a search warrant for evidence of illegal gambling; their detention was justified by reasonable suspicion of involvement in the crime and was also proper incident to execution of the search warrant. The detention by Canyon County officers and Sheriff Donohue did not violate clearly established constitutional rights.

Plaintiffs next allege the seizure "went far beyond the criminal investigation." (Complaint ¶¶ 97-110.) Specifically, Plaintiffs allege officers "conducted searches of small buildings on the La Catedral premises" while "the crowd was detained on the racetrack and not in the immediate vicinity of those buildings" (Complaint ¶ 104); that the arrests of four of the persons known to be conducting the gambling operation occurred "soon after law enforcement arrived" (Complaint ¶ 105); and that although "'large amounts of cash' [were] found on 'several' individuals out of the hundreds of individuals detained," police did not find "drugs, weapons, or other contraband." (Complaint, ¶ 109.) Plaintiffs allege Defendants "could have quickly and efficiently dispersed the crowd." (Complaint, ¶ 110.) These allegations do not in any way show that the initial detention of occupants of the premises of an illegal gambling operation during execution of a search warrant

for evidence of illegal gambling was clearly prohibited by the Fourth Amendment. Plaintiffs do not allege that the racetrack where the illegal gambling was taking place was beyond the scope of the search warrant, do not show why the lack of violence was relevant to reasonable suspicion or detention while the warrant was executed; and do not show why the ability to disperse the crowd instead of (legally) detaining them has any relevance at all.

Finally, Plaintiffs allege the seizure "was a departure from typical criminal investigations," comparing the allegations in this case to a handful of search warrants executed on homes or businesses. (Complaint, ¶¶ 119-22)(underlining, bolding, and capitalization omitted). The fact that the premises of the illegal gambling operation was a racetrack, and search warrants do not often involve gambling operations at racetracks, is irrelevant to any inquiry into whether Sheriff Donahue or his deputies violated clearly established Fourth Amendment rights. Just because execution of the "typical" search warrant at an indoor drug venue does not involve the detention of large numbers of people, does not mean that there is some sort of clear hard cap on the number of people on the premises of the illegal enterprise that can be detained.

Here, the facts as pled do not show that the detention of people on the premises of an illegal gambling operation, while a search warrant was executed for evidence of said illegal gambling, violated the Fourth Amendment, much less that it violated clearly established constitutional rights. The pleadings acknowledge that the racetrack was the scene of an illegal gambling operation subject to a search warrant. It was reasonable under the Fourth Amendment to initially detain everyone present on the premises of the illegal gambling operation, both under reasonable suspicion that they were participants in the illegal gambling and while the search warrant for evidence of illegal gambling was executed.

2. The Detention Was Not Rendered Unlawful, Much Less a Violation of Clearly Established Fourth Amendment Rights, Because of its Length

An otherwise lawful investigative detention may be rendered unlawful if unreasonably prolonged. *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985) (recognizing that brevity is a factor in the reasonableness of investigative detentions but declining to draw a "hard-and-fast time limit"). Likewise, detention on the premises being searched pursuant to a search warrant "for the length of the search" is reasonable. *Mena*, 544 U.S. at 95. The complaint does not allege facts demonstrating that the detentions were unreasonably prolonged or exceeded the length of the execution of the search warrant. It therefore fails to allege a prima facie claim of a Fourth Amendment violation, much less a violation overcoming the qualified immunity of Sheriff Donahue and any Canyon County law enforcement officers.

Plaintiffs allege that "200 law enforcement officers" were involved in detaining the crowd of "approximately 400" for "four hours" as they executed the search warrant. (*See* Complaint, ¶¶ 1-3, 8, 64, 75, 103, 245, 252, 260.) During this time the officers asked for "basic identifying information," including immigration status, but conducted no additional questioning. (Complaint, ¶¶ 152, 173.) The Complaint does not allege that the detention exceeded a reasonable length of time under the circumstances.

For example, it does not allege that the detention continued longer than the execution of the search warrant. Nor does it allege that four hours was an unreasonable time for 200 officers (who were also providing security and executing a search warrant) to obtain basic identifying information from the 400 persons present at the illegal gambling venue. Finally, questioning the detained persons about their immigration status did not alone render their detention unconstitutional. *Mena*, 544 U.S. at 102 (questioning detained person about immigration status did not render the detention unconstitutional). It appears that Plaintiffs are relying on the length of the

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - DEFENDANTS CANYON COUNTY AND SHERIFF KIERAN DONAHUE**

detention alone for their claim, a Fourth Amendment legal theory specifically rejected by the Supreme Court of the United States. *Sharpe*, 470 U.S. at 685-86. Plaintiffs have not alleged facts showing that four hours was an unreasonably long detention under the circumstances of this case, much less that only incompetent officers or ones deliberately violating the law could have concluded the length of detention was reasonable.

To survive the motion to dismiss, the Complaint must present non-conclusory allegations establishing not only a Fourth Amendment violation, but circumstances showing that "'every reasonable official would have understood that what he is doing violates that right.'" *Linton*, 607 U.S. at ___, 146 S.Ct. at 930 (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (*per curiam*). The Complaint does neither and should therefore be dismissed.

    3.   <u>The Detention Was Not Rendered Unlawful, Much Less a Violation of Clearly Established Fourth Amendment Rights, by the Use of Zip-Ties</u>

It is well-established that reasonable precautions for officers' safety, such as the use of restraints like handcuffs, do not automatically render a temporary detention unreasonable under the Fourth Amendment. *Mena*, 544 U.S. at 102. Plaintiffs have not alleged circumstances showing the use of zip-ties was unreasonable (*see* Complaint, ¶¶ 3, 102, 260), much less so unreasonable it would have been obvious to the officers that they were violating the Plaintiffs' rights.

4. <u>The Detention Was Not Rendered Unlawful, Much Less a Violation of Clearly Established Fourth Amendment Rights, by Other Alleged Actions</u>

Finally, Plaintiffs complain about the lack of water, food, bathrooms, and other behaviors by officers generally.[2] (*See, e.g.,* Complaint, ¶¶ 3-4, 68-69, 114, 142, 272.) The Complaint fails to articulate how these alleged acts or omissions rise to the level of Fourth Amendment violations, much less violate clearly established Fourth Amendment rights.

5. <u>Conclusion</u>

The Fourth Amendment allows temporary detentions based on reasonable suspicion of criminal activity. It also allows detentions of persons on the premises of a lawful search pursuant to warrant. To survive dismissal, a complaint alleging that a temporary detention was not within the scope of the Fourth Amendment must allege facts supporting a plausible claim that officers' actions were unconstitutional in a way that is beyond debate. Here, the Complaint's conclusory allegations of some Fourth Amendment violation do not show that detaining persons present on the premises of an illegal gambling operation during the execution of a search warrant for evidence of illegal gambling was clearly a violation of Fourth Amendment rights. As such, Counts 1 (conspiracy to violate Fourth Amendment Rights) and 5 (violation of Fourth Amendment rights) should be dismissed.

---

[2] The Complaint is very vague as to who it is alleging was responsible for these allege behaviors and does not specifically assert that Canyon County or Sheriff Donahue engaged in the alleged behaviors.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - DEFENDANTS CANYON COUNTY AND SHERIFF KIERAN DONAHUE**

**B.** **Claims That Sheriff Donahue Violated and Conspired to Violate Clearly Held Constitutional Equal Protection Rights or Failed to Prevent Such Violations Must be Dismissed**

"[A]n official loses qualified immunity only for violating clearly established law . . . ." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017). "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law," and therefore "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct was unlawful in the situation he confronted." *Id.* at 152 (internal quotations omitted).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A plaintiff claiming an equal protection violation must demonstrate the defendant's action "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte v. United States*, 470 U.S. 598, 608 (1985).) The Complaint does not present a viable cause of action on either element of an Equal Protection claim.

First, the Complaint does not contain sufficient factual allegations, accepted as true, to state the first element of discriminatory effect. "In order to prove a discriminatory effect, 'the claimant must show that similarly situated individuals . . . were not prosecuted.'" *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012) (quoting *United States v. Armstrong,* 517 U.S. 456, 465 (1996)). "The goal of identifying a similarly situated class . . . is to isolate the factor allegedly subject to impermissible discrimination. The similarly situated group is the control group." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995).

The Complaint contains no allegations showing that similarly situated individuals have been treated differently than the Plaintiffs. For example, there is no allegation that Canyon County or Sheriff Donahue does or would decline cooperation in execution of a federal search warrant except where the defendants are Latino. There are no allegations that only Latinos in the crowd were detained during execution of the warrant while non-Latinos were released. Indeed, the only allegation of different treatment is between those with lawful status in the United States (whose temporary detention ended) and those whose presence in the United States was not legal (whose detention became more permanent). (Complaint, ¶¶ 83, 153-54.) Plaintiffs have simply failed to identify a similarly situated class to act as a control group.

Second, the Complaint does not contain sufficient factual allegations, accepted as true, to state the second element of discriminatory purpose. "To show discriminatory purpose, a plaintiff must establish that the decision-maker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1153 (9th Cir. 2007) (internal quotations omitted), (citing *Wayte*, 470 U.S. at 610). Although the Complaint goes long on innuendo suggesting that the only reason anyone would want to enforce immigration laws is deep-seated racism, there are no allegations that the Canyon County Defendants agreed to help execute the search warrant for illegal gambling "because of, not merely in spite of its adverse effects" on the people frequenting the illegal gambling operation who happened to be mostly Latino.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). It is simply not plausible on its face or as pled that Canyon County or Sheriff Donahue agreed to assist in the execution of the search because it would have adverse

effects on a particular ethnic group. The claims of conspiracy to deny equal protection (Complaint, ¶¶ 250-256), conspiracy to deprive individuals of equal protection (Complaint, ¶¶ 257-263), and failure to prevent deprivation of equal protection (Complaint, ¶¶ 264-269) should be dismissed.

**C.** **Even if Plaintiffs had Stated a Claim, Canyon County Should Be Dismissed from the Suit Because Plaintiffs Have Not Alleged Facts Showing They Were Harmed by a County Policy**

"Local governing bodies" such as Canyon County "can be sued directly under § 1983" if the basis for the claim arises out of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Canyon County may not be held liable under a theory of *respondeat superior. Id.* at 691. "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60-61, 131 S.Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (quoting *Monell,* 436 U.S. at 691). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61.

Under this standard, "not every decision by [county] officers automatically subjects the [county] to § 1983 liability." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Section 1983 liability attaches to a county "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483. Counties "should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless

has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997).

A county may be held liable under §1983 under three theories: (1) the employee "committed the alleged constitutional violation pursuant to a formal governmental policy" or "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) the "individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy"; or (3) "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (internal quotations omitted). Mere acquiescence by a policymaker or "fail[ure] to overrule" is inadequate; ratification requires "that a policymaker approve a subordinate's decision *and the basis for it*." *Gillette*, 979 F.2d at 1348 (emphasis original).

"To establish *Monell* liability under § 1983, the constitutional violation must be caused by a municipality's 'policy, practice, or custom' or be ordered by a policy-making official." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1172 (9th Cir. 2021). A county is liable for an isolated constitutional violation under this theory only "*when the person causing the violation* has final policymaking authority." *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004) (emphasis added, quotation marks omitted).

Applying these standards shows that Plaintiffs have failed to allege a viable claim that Canyon County violated their constitutional rights. Plaintiffs allege the County is a proper

defendant because of the actions of Sheriff Donahue. (Complaint, ¶¶ 233-34.[3]) However, the alleged actions of Sheriff Donahue do not show that Canyon County caused any infringement on constitutional rights.

First, Plaintiffs have not alleged any constitutional tort arising from a formal governmental policy or longstanding practice or custom. (*See* Complaint.) Indeed, Plaintiffs specifically allege that what happened here is not typical. (Complaint, ¶¶ 119-120)(detention in this matter "atypical" and "without precedent").

Second, Plaintiffs have not alleged a viable claim that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Plaintiffs allege that Sheriff Donahue "caused and/or directed [his] subordinates" to violate their rights by either planning the actions surrounding execution of the search warrant or directing someone else to make the plan. (Complaint, ¶¶ 233-234.) Claims that Sheriff Donahue played some unknown role in the planning of how the search warrant would be executed, unless someone else did the planning, is merely a "naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). It does not rise to the level of properly alleging that the acts of Canyon County's policymaking official caused a deprivation of their constitutional rights.

Third, Plaintiffs have not alleged a viable claim of ratification. They conclusory allege Sheriff Donahue ratified the action, covered up the warrant execution's "immigration function," and "directly participated" in executing the warrant. (Complaint, ¶ 234.) The only specific allegations of acts by Sheriff Donahue are, however, that he is a "partner" in the "Treasure Valley

---

[3] For purposes of this motion, Canyon County does not dispute that Sheriff Donahue is a policymaker for law enforcement actions by Canyon County law enforcement officers.

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS - DEFENDANTS CANYON COUNTY AND SHERIFF KIERAN DONAHUE**

Task Force" that "participated in and coordinated the Raid" (Complaint, ¶¶ 51, 169); "deploy[ed]" law enforcement officers to participate in the execution of the search warrant (Complaint, ¶ 99); claimed that the execution of the warrant was a law enforcement action and not an immigration enforcement action (Complaint, ¶ 210); stated that it was an "honor" to be part of the warrant execution operation (Complaint, ¶ 214); praised the importance of the task force (Complaint, ¶ 230); and "directly" participated in the execution of the search warrant in some unspecified way. (Complaint, ¶ 234.) None of these actions are policymaking by Sheriff Donahue, and none of them rise to the level of a policymaker approving a subordinate's decision *and the basis for it. Gillette*, 979 F.2d at 1348.

Plaintiffs have not made specific allegations that would take their claim against Canyon County out of the realm of respondeat superior. *Monell,* 436 U.S. 690. Specifically, Plaintiffs have not alleged how the actions of *Canyon County* violated their rights. Although Plaintiffs allege that Sheriff Donahue is a *policymaker*, none of the specific actions he allegedly performed amount to *policymaking*. Mere acquiesce by Sheriff Donahue is not enough to plead liability by Canyon County. Plaintiffs have not alleged that Sheriff Donahue gave any orders or instructions that those under his supervision behave in a manner that violates any constitutional rights.

**D.** **<u>Alternatively, the Complaint Gives Insufficient Notice Because of Improper Group Pleading</u>**

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule requires that the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

"Courts have routinely found that 'group pleading' is impermissible under Rule 8." *Barton v. Bright Solar Mktg. LLC*, No. 3:25-CV-05310-DGE, 2026 WL 746586, at *3 (W.D. Wash. Mar. 17, 2026). "Undifferentiated group pleading that does not indicate which individual defendant or defendants were responsible for which wrongful act is impermissible under Rule 8 because it fails to provide [adequate] notice." *Russo v. Fed. Med. Servs., Inc.*, 744 F. Supp. 3d 914, 922 (N.D. Cal. 2024) (internal quotations omitted). The Rule thus "require[s] that the allegations be sufficient to put each defendant on notice of what they allegedly did or did not do." *Howard v. Mun. Credit Union*, No. 05 CIV. 7488 (LAK), 2008 WL 782760, at *12 (S.D.N.Y. Mar. 25, 2008). "As a general rule, when a pleading fails to allege what role each Defendant played in the alleged harm, this makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (internal quotations omitted).

The prohibition against group pleading was applied in *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003 (S.D. Cal. 2018), a case analogous to this one. In that case the plaintiff alleged that five police officer defendants were involved in a traffic stop and search of his motorcycle saddlebags. *Id.* at 1009-10. He alleged that his consent to search the saddlebags was coerced by statements by one of the officers, violating a California law called the Bane Act. *Id.*

*See also id.* at 1017 (explaining that Bane Act is California law prohibiting coercing others into giving up legal rights). Victoria's allegation that "one of the arresting officers searched his saddlebags without his consent" after a coercive threat by an unnamed officer were inadequate for "failure to plead the actions of each Defendant individually." *Id.* at 1018-19. Such a "group pleading does not provide Defendants fair notice of the claims against them." *Id.* at 1019.

In this case there are 11 named defendants from 2 federal agencies and 4 state, county and municipal agencies; 1 county (Canyon County); 2 cities; and 20 unnamed "John Doe" Defendants. (Complaint, pp. 1-2.) The Complaint includes "KIERAN DONAHUE, *in his individual capacity*," "CANYON COUNTY," and any John Doe defendants employed by the Canyon County Sheriff's Office. (Complaint, p. 2)(italics and capitalization original). It lumps both the County and Sheriff Donahue in as "State Defendants." (Complaint, ¶ 9.) The only individual actions by anyone associated with Canyon County is Sheriff Donahue, and the allegations of his involvement are vague and unspecific representations that he may have been involved in the planning and coordination and was physically present when it happened. (Complaint, ¶¶ 51, 99, 166, 184, 234.) Canyon County and Sheriff Donahue are entitled to notice of the specific actions they undertook that allegedly violated the Plaintiffs' rights. Merely alleging that someone involved in the execution of the search warrant violated Plaintiffs' rights is insufficient. The Complaint fails to provide adequate and proper notice to Canyon County and Sheriff Donahue.

## III. CONCLUSION

Because the Complaint does not contain sufficient factual allegations, accepted as true, to state a claim to relief that is plausible on its face as to Canyon County and Sheriff Donahue, it should be dismissed as to those defendants. Alternatively, it should be dismissed for lack of notice of what specific actions Canyon County and Sheriff Donahue must defend against.

DATED this 23rd day of June, 2026.

*/s/ Aaron J. Bazzoli*
Aaron J. Bazzoli

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on or about this 23rd day of June, 2026, I filed foregoing electronically through the CM/ECF system, which caused the CM/ECF associated parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participant in the manner indicated:

Via Electronic Mail, addressed as follows:

Bruce Castleton
Attorney for City of Nampa, Joe Huff, Chief of Nampa Police,
City of Caldwell, Rex Ingram, Chief of Caldwell Police
bcastleton@castletonlegal.com


*/s/ Aaron J. Bazzoli*
Aaron J. Bazzoli