RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

GREGORY E. WOODARD, ISB #11329
Deputy Attorney General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
greg.woodard@ag.idaho.gov


*Attorneys for Defendant Bill Gardiner*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| JUANA RODRIGUEZ et al., | Case No. 1:26-cv-00075-AKB |
| *Plaintiffs*, | |
| v. | **MEMORANDUM IN SUPPORT OF ISP DIRECTOR BILL GARDINER'S MOTION TO DISMISS** |
| KENNETH PORTER et al., | |
| *Defendants*. | |

Plaintiffs' Complaint is fatally deficient regarding the allegations against Defendant Bill Gardiner relating to the federal enforcement action that took place at the La Catedral racetrack in October 2025. Plaintiffs' threadbare allegations against Gardiner fail to allege any constitutional violations as Gardiner cannot be vicariously liable for the actions of any other Idaho State Police ("ISP") officer. The Complaint's allegations at best allege that Gardiner supervised and directed ISP officers during the enforcement action, but Gardiner is entitled to qualified immunity because there are no allegations that he was part of a conspiracy to abuse federal arrest warrants to conduct a mass seizure of individuals at the racetrack. Plaintiffs' conspiracy claims also fail because they do not allege that Gardiner was involved in the conspiracy or knew of the conspiracy.

Even if Plaintiffs successfully alleged Gardiner had a role in the alleged conspiracy, the Complaint's shotgun allegations merit dismissal.

For these reasons, the Court should grant Gardiner's motion and dismiss all claims against him.

## FACTUAL BACKGROUND AS ALLEGED IN THE COMPLAINT[1]

On October 19, 2025, approximately 400 people gathered at La Catedral racetrack in Wilder, Idaho. Dkt. 1 ¶ 1. At approximately 1:00 p.m. law enforcement officers from federal, state, and local agencies arrived at the racetrack. *Id.* ¶ 2. Prior to arriving at the racetrack, the FBI secured a search warrant related to alleged unlawful gambling and arrest warrants for five individuals believed to be involved in illegal activity at the racetrack. *Id.* ¶¶ 5, 90, 166(iv), 172.

---

[1] The facts are cited from the Complaint and they must be accepted as true (excluding legal conclusions) for purposes of this motion. However, Gardiner is not admitting they are true in this action.

As part of the execution of the search warrant, the officers detained the crowd for several hours and set up a tent on the property. *Id.* ¶ 3. During the enforcement action, the crowd was questioned about their immigration status. *Id.* ¶ 7. Ultimately, 105 people were arrested for alleged immigration violations. *Id.*

Gardiner is the director of the ISP. *Id.* ¶ 26. Regarding the enforcement action, he "coordinated" with other Defendants "to deploy approximately 200 law enforcement officers" to the enforcement action at the track. *Id.* ¶ 99. He sent a SWAT Team Commander to a telephonic planning meeting with other Defendants on October 14. *Id.* ¶ 175. He was "responsible for the direction and supervision of" ISP officers who were present at the enforcement action and he was "directly involved in planning and/or executing" the enforcement action. *Id.* ¶ 166. He "and/or those acting at [his] direction and under [his] control and supervision – were directly involved in detaining attendees, holding them at the racetrack, and then processing them through immigration status screening." *Id.* ¶ 184.

The day after the enforcement action, Gardiner received two emails from Defendant Sheehan and Defendant Porter. *Id.* ¶¶ 145, 156, 213.

That is the totality of the allegations against Gardiner related to the federal enforcement action.

**LEGAL STANDARD**

To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d

953, 959 (9th Cir. 2013) (citation omitted). There is no requirement that the Court accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

**I.     All Plaintiffs' Claims Fail as Gardiner is not Liable for the Acts of his Subordinates.**

Gardiner is not liable for the actions of the ISP officers involved in the federal enforcement action. "Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (quoting *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989)). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id.* (quoting *Hansen*, 885 F.2d at 646). Under the second prong, "[s]upervisory liability exists even without overt personal participation in the [overt] act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of [a] constitutional violation.'" *Hansen*, 885 F.2d at 646 (quoting *Thomkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

All the allegations in the Complaint that relate to the ISP for actions that allegedly took place at the racetrack during the enforcement action are against unnamed officers, not Gardiner. The 64-page Complaint names Gardiner in a grand total of 11 paragraphs out of 283. Taking general allegations out of the equation, the Complaint alleges only the following against Gardiner:

1.     He "coordinated" with other Defendants "to deploy approximately 200 law enforcement officers" to the enforcement action at the track. Dkt. 1 ¶ 99.

2.     He received an email from Defendant Sheehan the day after the enforcement action. *Id.* ¶¶ 145, 213.

3.	He received an email from Defendant Porter the day after the enforcement action. *Id.* ¶ 156.

4.	He was "responsible for the direction and supervision of" ISP officers who were present at the enforcement action and he was "directly involved in planning and/or executing" the enforcement action. *Id.* ¶ 166.

5.	He sent a SWAT Team Commander to a telephonic planning meeting with other Defendants on October 14. *Id.* ¶ 175.

6.	He "and/or those acting at [his] direction and under [his] control and supervision – were directly involved in detaining attendees, holding them at the racetrack, and then processing them through immigration status screening." *Id.* ¶ 184.

There are no allegations that Gardiner participated directly in the enforcement action (because he did not), and no allegations about his alleged involvement in the planning stages, other than sending an officer to a telephonic meeting in which he apparently did not participate personally. There are no allegations about how he allegedly directed or supervised the ISP officers who were at the enforcement action. The conclusory allegations currently in the Complaint are insufficient as a matter of law.[2] *Twombly*, 550 U.S. at 555, 557 (a complaint that offers "labels and conclusions, . . . a formulaic recitation of the elements of a cause of action[,]" or "naked assertion[s]" devoid of "further factual enhancement" will not suffice).

In short, Plaintiffs have failed to allege that Gardiner was personally involved in any alleged constitutional deprivation, or that there was a sufficient causal connection to any policy he

---

[2] Pursuant to the Court's rules on Motion Practice, Gardiner's counsel brought these pleading deficiencies under *Iqbal* and *Twombly* to Plaintiffs' counsel's attention but they chose not to amend the Complaint to address the deficiencies, necessitating this motion.

issued that was a "'repudiation of constitutional rights' and . . . 'the moving force of a constitutional violation.'" *Hansen*, 885 F.2d at 646 (quoting *Thomkins*, 828 F.2d at 304).

Moreover, since Plaintiffs have failed to allege a Section 1983 claim against Gardiner, their Third and Fourth Claims under 42 U.S.C. §§ 1985 and 1986 also fail. "[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) (citations omitted). Moreover, "because § 1986 claims require the existence of a valid § 1985(3) claim, the plaintiff's § 1986 claim must be dismissed as well." *Meza v. Lee*, 669 F. Supp. 325, 327 (D. Nav. 1987) (citing *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983)).

The Court should grant the motion and dismiss all Plaintiffs' claims against Gardiner.[3]

## II.     All Plaintiffs' Claims Fail as Gardiner is Entitled to Qualified Immunity.

Gardiner, as a non-participant in the enforcement action, is entitled to qualified immunity. Qualified immunity analysis proceeds in two steps: first, whether the facts show that the officer's conduct violated a constitutional right; and second, if a violation is found, whether the right was clearly established at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court may address these prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If no constitutional violation is established at the first step, no further inquiry is necessary (*Saucier*, 533 U.S. at 201), and a supervisory officer who lacks personal involvement in the alleged violation

---

[3] While Plaintiffs' Fifth and Sixth Claims are pled as standalone violations of the Fourth and Fourteenth Amendments, "a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (citing *Azul–Pacifico Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992)). Accordingly, Plaintiffs' Fifth and Sixth Claims also are barred as Gardiner is not liable for the acts of his subordinates.

will typically fail at the first step, entitling him to qualified immunity without the court ever reaching whether the right was clearly established.

### A. Gardiner had no personal involvement in the enforcement action.

Gardiner's actions do not give rise to any constitutional violations. As explained in detail above, supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (emphasis in original). A plaintiff must establish that each individual government-official defendant, "through the official's own individual actions, has violated the Constitution." *Id.*

As noted in Section I, Gardiner cannot be held vicariously liable for his subordinates' actions. He did not participate in the enforcement action and the most the Complaint alleges he did was send a subordinate to a pre-enforcement meeting. There is no evidence that Gardiner even knew what actions would be taken at the enforcement action.

Gardiner's actions here are similar to those held immune in *Peschel v. City of Missoula*, 686 F. Supp. 2d 1092, 1100 (D. Mont. 2009). In *Peschel*, the plaintiff alleged that the Chief of Police violated his constitutional rights during his arrest even though the Chief was not present at his arrest because he instructed the officer on the scene by telephone to make the arrest. The court held that the Chief had qualified immunity because he did not violate the plaintiff's constitutional rights since he did not participate in the arrest or direct officers to violate the plaintiff's rights.

Similarly, here there is no evidence Gardiner did anything to violate Plaintiffs' rights. Indeed, there are no allegations that Gardiner instructed his officers to do anything at the enforcement action, or even knew what would take place at the action. Since there is no evidence that Gardiner violated Plaintiffs' constitutional rights, Gardiner is entitled to qualified immunity.

**B. There is no clearly established constitutional right that Gardiner violated.**

Even if Plaintiffs properly alleged Gardiner violated their constitutional rights, they were not clearly established. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

> To find that a right is clearly established, courts generally need to identify a case where an officer acting under similar circumstances was held to have violated the Constitution. The relevant precedent must define the right with a high degree of specificity, so that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Principles stated generally, such as that an officer may not use unreasonable and excessive force, do not suffice. In short, officers receive qualified immunity unless they could have read the relevant precedent beforehand and known that it proscribed their specific conduct.

*Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (citations and internal quotation marks omitted).

The appropriate question here is whether Gardiner would have believed that his actions in simply having knowledge of and offering the assistance of ISP officers in a lawful federal enforcement action amounted to a conspiracy to deprive Plaintiffs of their constitutional rights. "As a defense to claims under § 1985(3), qualified immunity is available not only when officers reasonably might not have known that the actions they allegedly conspired to take were unlawful but also when officers reasonably might not have known that their planning could be labeled a conspiracy under the statute." *K.O. v. U.S. Immigr. & Customs Enf't*, 468 F. Supp. 3d 350, 368 (D.D.C. 2020) (citing *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017)), aff'd sub nom. *K.O. by & through E.O. v. Sessions*, No. 20-5255, 2022 WL 3023645 (D.C. Cir. July 29, 2022).

Plaintiffs' conspiracy claims relate to an alleged plan to abuse criminal warrants to detain Plaintiffs in a mass seizure in violation of their constitutional rights. Dkt. 1 ¶¶ 244, 251, 258, 265. There are no allegations that Gardiner had any knowledge of any alleged plan to abuse criminal

warrants. At best, the Complaint alleges that Gardiner "coordinated" with other Defendants "to deploy approximately 200 law enforcement officers" to the enforcement action at the track and directed and supervised the officers involved in the enforcement action. *Id.* ¶¶ 99, 166, 184. This coordination was pursuant to search and arrest warrants the FBI had secured for five individuals for illegal gambling. *Id.* ¶¶ 5, 166(iv), 172. Setting aside the fact that these conclusory allegations are insufficient under *Iqbal*, they also fail to allege anything other than Gardiner's tangential involvement, by simply sending officers under his command to assist in a lawful federal enforcement action.

Moreover, Gardiner's actions in simply supervising and directing ISP officers are immune. The "bare allegation" that a supervisor was responsible for "the administration and management of all ICE enforcement activities within Northern California" "is insufficient to withstand a motion to dismiss as it provides absolutely no factual predicate as to how [a supervisor] violated any of the plaintiffs' constitutional rights." *Comm. for Immigrant Rts. of Sonoma Cnty. v. County of Sonoma*, 644 F. Supp. 2d 1177, 1200 (N.D. Cal. 2009). The bare allegations here that Gardiner supervised and directed ISP officers at the federal enforcement action are not sufficient and Gardiner is immune from suit. The Court should grant the motion and dismiss Plaintiffs' claims.

III. **Plaintiffs' First and Second Claims Fail as They Have Failed to Properly Allege Gardiner was Part of an Agreement to Violate Their Fourth or Fourteenth Amendment Rights.**

Plaintiffs have not alleged Gardiner was involved in an agreement to violate their rights. "To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate their constitutional rights. . . . To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal quotations and citations omitted).

Plaintiffs' § 1983 conspiracy claims relate to an alleged agreement to abuse criminal warrants to detain Plaintiffs in a mass seizure in violation of their constitutional rights. Dkt. 1 ¶¶ 244, 251. However, they fail to allege that Gardiner is part of the alleged agreement. Plaintiffs' allegations about Gardiner's involvement in the conspiracy are that he is "responsible for the direction and supervision of those from their respective agencies who carried out the Raid" and that he was "directly involved in planning and/or executing the Raid." Dkt. 1 ¶ 166. However, those conclusory statements are insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 557.

The only factual allegations in the Complaint about the alleged conspiracy involving ISP relate to ISP officers' actions in a pre-enforcement meeting and on the day of the enforcement action. Dkt. 1 ¶¶ 175–77, 184–85, 187, 189, 192. There are no allegations in the Complaint about Gardiner's role in the alleged conspiracy, other than sending an officer to a telephonic meeting that he apparently did not attend personally. There are no allegations about how he allegedly directed or supervised the ISP officers who attended the pre-enforcement meetings or who were at the enforcement action. And all the ISP's actions alleged in the Complaint were done pursuant to search and arrest warrants the FBI had secured for five individuals suspected of illegal gambling at the racetrack. *Id.* ¶¶ 5, 166(iv), 172. This is insufficient to properly allege a conspiracy under Section 1985(3). *See Lacey v. Maricopa County*, 693 F.3d 896, 937 (9th Cir. 2012) ("The conclusory conspiracy allegations . . . do not define the scope of any conspiracy involving [Defendants], what role [they] had, or when or how the conspiracy operated" regarding Gardiner.); *see also Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1015 (N.D. Cal. 2014) ("Plaintiff has not alleged sufficient specific facts regarding the alleged conspiracy, including: (1) a specific agreement

between [Defendants]; (2) the scope of the conspiracy; (3) the role of [the Defendants] in the conspiracy; [and] ... (4) ... how the conspiracy operated.").

The Court should grant Gardiner's motion and dismiss the First and Second Claims.

**IV.** **Plaintiffs' Third and Fourth Claims Fail as They Have Failed to Properly Allege Gardiner Engaged in a Conspiracy to Deprive Plaintiffs of Equal Protection.**

Plaintiffs have failed to allege a conspiracy involving Gardiner or any act by him in furtherance of the conspiracy.

> To state a cause of action under s 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States.

*Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)).

Plaintiffs alleging conspiracy claims "must meet [a] heightened pleading standard . . . . 'A mere allegation of conspiracy without factual specificity is insufficient.'" *Grier v. Brown*, 230 F.Supp.2d 1108, 1115 & n.7 (N.D. Cal. 2002) (citing *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988)). "[T]o survive a motion to dismiss, plaintiffs must state in their complaint nonconclusory allegations setting forth evidence of unlawful intent. The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity." *Branch v. Tunnell*, 937 F.2d 1382, 1386 (9th Cir. 1991) (citation and internal quotation marks omitted). "As with [the plaintiff's] other claims, his allegations of conspiracy must satisfy *Iqbal*." *Lacey*, 693 F.3d at 935. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on

the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

### A. Plaintiffs have failed to allege a conspiracy involving Gardiner.

"To meet the first element [conspiracy], 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'" *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1069 (C.D. Cal. 2024) (citing *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989); *Coverdell v. Dept. of Social and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)). "A mere allegation of conspiracy without factual specificity is insufficient" for § 1985(3) liability. *Karim-Panahi*, 839 F.2d at 626 (citations omitted).

As noted above, Plaintiffs' allegations that Gardiner is "responsible for the direction and supervision of those from their respective agencies who carried out the Raid" and that he was "directly involved in planning and/or executing the Raid" (Dkt. 1 ¶ 166) are conclusory statements that are insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 557. Moreover, the only factual allegations about the alleged conspiracy involving ISP relate to ISP officers' actions in a pre-enforcement meeting and on the day of the enforcement action. Dkt. 1 ¶¶ 175–77, 184–85, 187, 189, 192. The Complaint fails to allege Gardiner's role in the alleged conspiracy beyond sending an officer to a telephonic meeting. The Complaint also fails to allege facts about Gardiner's alleged supervision of the ISP officers. Finally, as noted above, all the ISP's actions alleged in the Complaint were done pursuant to search and arrest warrants the FBI had secured for the federal enforcement action. *Id.* ¶¶ 5, 166(iv), 172. As with Plaintiffs' failed § 1983 claims, the allegations in the Complaint are insufficient to properly allege a conspiracy under Section 1985(3) and Plaintiffs' Third and Fourth Claims should be dismissed. *See Lacey*, 693 F.3d at 937; *see also Steshenko*, 70 F. Supp. 3d at 1015.

**B. Plaintiffs have failed to allege an act by Gardiner that was in furtherance of the conspiracy.**

None of the alleged overt acts Plaintiffs allege were taken by Gardiner. Plaintiffs claim that Defendants engaged in several overt acts in furtherance of the alleged conspiracy, including:

> [P]reparing a plan to conduct a large-scale automatic seizure of attendees at La Catedral and subject them to interrogation . . . . and, at the Raid, descending on La Catedral with military-grade weapons and enough zip-ties for hundreds of people . . . . detaining the plaintiffs automatically as incident to warrant execution when automatic detention was not permitted . . . . continuing to detain the plaintiffs for four hours without food and in burdensome conditions; engaging in burdensome, violent, and abusive behavior toward the plaintiffs; separating the plaintiffs into groups based in part on ethnicity; moving the plaintiffs through the ICE Tent for interrogations about their immigration status; interrogating the plaintiffs about their immigration status; only releasing the plaintiffs after forcing them to verify lawful status; and facilitating the unlawful seizure and interrogation of the plaintiffs.

Dkt. 1 ¶ 260.

All the allegations of overt acts relate to actions taken on the day of the enforcement action. There are no allegations that these actions were taken by Gardiner because he was not present at the racetrack on the day of the enforcement action. Moreover, there are no factual allegations that Gardiner had anything to do with any actions that were taken by ISP officers during the enforcement action. Indeed, there is no allegation that Gardiner was at any of the pre-enforcement meetings.

Accordingly, Plaintiffs have failed to allege that Gardiner was involved in the conspiracy or that he engaged in an overt act in furtherance of the alleged conspiracy and the Court should grant Gardiner's motion and dismiss the Third Claim for violation of § 1985(3). Moreover, "because § 1986 claims require the existence of a valid § 1985(3) claim, the plaintiff's § 1986 claim must be dismissed as well. *Meza*, 669 F. Supp. at 327 (citing *Mollnow*, 716 F.2d at 632).

**V.    Plaintiffs' Fourth Claim Fails as They Have Failed to Allege Gardiner Knew of the Alleged § 1985 Conspiracy.**

Plaintiffs have not plead that Gardiner had actual knowledge of the alleged conspiracy. To prevail on a Section 1986 claim Plaintiff must show that: "(1) the defendant had actual knowledge of a § 1985 conspiracy; (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation; (3) the defendant neglected or refused to prevent a § 1985 conspiracy; and (4) a wrongful act was permitted." *Jones v. Tozzi*, No. 1:05CV0148OWWDLB, 2006 WL 2472752, at *9 (E.D. Cal. Aug. 24, 2006) (quoting *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir.1994)). "A successful § 1986 claim depends on 'proof of actual knowledge by a defendant of the wrongful conduct.'" *Id.* (quoting *Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir.1998)).

Plaintiffs' § 1985 conspiracy claim alleges that the Defendants:

[C]onspired with each other by entering into a mutual agreement to abuse criminal warrants to conduct a mass seizure and immigrant dragnet targeted at a large gathering of Latino community members based in part on their actual or perceived Latino ethnicity or association with people of actual or perceived Latino ethnicity, in violation of the plaintiffs' right to equal protection under the law.

Dkt. 1 ¶ 258.

There are no allegations that Gardiner had any knowledge of the alleged conspiracy related to the criminal warrants. As noted above, there are allegations that Gardiner: "coordinated" with other Defendants "to deploy approximately 200 law enforcement officers" to the enforcement action at the track (Dkt. 1 ¶ 99); received two emails after the enforcement action (*Id.* ¶¶ 145, 156, 213); supervised ISP officers who were present at the enforcement action and allegedly detained and processed attendees (*Id.* ¶¶ 166, 184); sent a subordinate to a telephonic planning meeting (*Id.* ¶ 175); and the conclusory allegation that he was somehow "directly involved in planning and/or executing" the enforcement action. *Id.* ¶ 166.

None of those allegations state that Gardiner had knowledge of the alleged conspiracy to abuse criminal warrants to target Latinos based on their ethnicity. This failure is fatal to Plaintiffs' Fourth Claim against Gardiner and the Court should dismiss the claim.

**VI.      Plaintiffs' Claims are Shotgun Pleadings and Should be Dismissed.**

The Complaint should be dismissed as an inappropriate shotgun pleading. The Court is required "to construe the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of every action.' Fed. R. Civ. P. 1." *Gibson v. City of Portland*, 165 F.4th 1265, 1287 (9th Cir. 2026). Every "pleading that states a claim for relief must contain" three things: "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)–(3).

"Even 'well-pleaded facts' are not sufficient if they are accompanied by only '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Gibson*, 165 F.4th at 1287. "The goal here is to provide 'sufficient notice' so the parties and the court can 'focus litigation on the merits of a claim.'" *Gibson*, 165 F.4th at 1287 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against . . . ." is an impermissible shotgun pleading. 35A C.J.S. Fed. Civ. Proc. § 310 (2025). "[T]he problem with shotgun pleadings is that they make it difficult, if not impossible, for the opposing party to formulate a response." *Gibson*, 165 F.4th at 1288. "[Shotgun pleadings] waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (quoting *Vibe*

*Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (citation modified) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 981–83 (11th Cir. 2008), abrogated on other grounds by *Twombly*, 550 U.S. at 544)).

The improper complaint in *Gibson* is instructive here. There, while the complaint contained detailed facts in 252 paragraphs, the court still struck it as an improper pleading. As the Ninth Circuit noted, "[t]he problem arises [when] we get to Plaintiffs' four claims for relief. All details evaporate when they had to link their facts to their causes of action." *Id*. at 1291. In evaluating the plaintiffs' § 1983 claim, the court noted that the defendants "include[d] three governmental entities, four prosecutors, and one police detective." In evaluating the plaintiffs' other claims under §§ 1985 and 1986, the court held that alleging that "Defendants" committed acts without identifying specific Defendants was not sufficient to withstand a 12(b)(6) motion. *Id.* at 1294–95 ("Are all of the Defendants participants? . . . we have no idea whether 'Defendants' means *all* of the Defendants or some of the Defendants.") (emphasis in original).

Like the plaintiffs in *Gibson*, Plaintiffs have engaged in the same improper shotgun pleading method. All Plaintiffs' claims incorporate their 242 paragraphs of factual allegations, but their individual claims only allege "Defendants," "State Defendants,"[4] or "Federal Defendants"[5] committed the acts. *See, e.g.*, Dkt. 1 ¶¶ 244–49, 251–56, 258–63, 265–69, 271–74, 276–77. These allegations are virtually identical to the kinds of allegations the *Gibson* court held were impermissible shotgun pleadings. For the same reasons, the Court should grant the motion to dismiss.

---

[4] The Complaint defines "State Defendants" as "Defendants Donahue, Ingram, Huff, Gardiner, Canyon County, City of Caldwell, and City of Nampa." Dkt. 1 ¶ 34.

[5] The Complaint defines "Federal Defendants" as "Defendants Porter, Bohls, Sheehan, and Sheridan." Dkt. 1 ¶ 33.

## CONCLUSION

For the foregoing reasons, Gardiner request the Court grant his motion and dismiss all claims against him.

DATED: June 23, 2026

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

/s/*Gregory E. Woodard*
GREGORY E. WOODARD
Deputy Attorney General

*Attorney for Defendant Bill Gardiner*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY THAT on June 23, 2026 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Allison Frankel<br>afrankel@aclu.org | Connor John Hackert<br>connor.hackert@usdoj.gov |
| Emma Andersson<br>eandersson@aclu.org | Juliana Macpherson Barrett<br>Juliana.m.barrett@usdoj.gov |
| Jennifer Rolnick Borchetta<br>jborchetta@aclu.org | Paul C. Quast<br>paul.c.quast@usdoj.gov |
| Jorge Castillo<br>jorgecastillo@aclu.org | *Attorneys for Defendant Kenneth Porter, Chris Sheehan, Jake Sheridan and Robert Bohls* |
| Paul Carlos Southwick<br>psouthwick@acluidaho.org | Aaron J. Bazzoli<br>pacivilmail@canyoncounty.id.gov |
| Emily Myrei Croston<br>ecroston@acluidaho.org | Benjamin Thomas Cramer<br>ben.cramer@canyoncounty.id.gov |
| Wendy Olson<br>Wendy.olson@stoel.com | *Attorneys for Defendant Kieran Donahue and Canyon County* |
| Eduardo Santacana<br>esantacana@cooley.com | |
| Simona Agnolucci<br>sagnolucci@cooley.com | |
| Jade Ford<br>jford@cooley.com | |

*Attorneys for Plaintiffs*

/s/*Gregory E. Woodard*
GREGORY E. WOODARD