Bruce J. Castleton ISB No. 6915
CASTLETON LAW PLLC
10400 Overland Road #238
Boise, ID 83709
Telephone No. (208) 629-4590
Facsimile No. (208) 509-4814
Email: bruce@castletonlegal.com

*Attorney for City of Caldwell, City of Nampa, Rex Ingram and Joe Huff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| JUANA RODRIGUEZ, *on behalf of herself and her minor child* Y.R.; X.Z., *on behalf of himself and his minor child* Y.Z.; IVAN POPOCA, *on behalf of himself and his minor children* E.I.P. *and* A.S. P.; *and on behalf of all others similarly situate*d,<br><br>Plaintiffs,<br>vs.<br><br>KENNETH PORTER, Acting Director of the Boise U.S. Immigration and Customs Enforcement Field Sub-Office, *in his individual capacity*; ROBERT BOHLS, Special Agent in Charge of the Salt Lake City Office of the Federal Bureau of Investigation, *in his individual capacity*, CHRIS SHEEHAN Supervisory Special Agent of the Federal Bureau of Investigation's Boise Resident Agency, *in his individual capacity*; JAKE SHERIDAN, Special Agent of the Federal Bureau of Investigation, *in his individual capacity*; KIERAN DONAHUE, Canyon County Sheriff, *in his individual capacity*; REX INGRAM, Chief of the Caldwell Police Department, *in his individual capacity*; JOE HUFF, Chief of the Nampa Police Department, *in his* | Case No. 1:26-cv-00075-AKB<br><br>**DEFENDANTS CITY OF CALDWELL, CITY OF NAMPA, REX INGRAM AND JOE HUFF'S REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS (Dkt. No. 44)** |

*individual capacity*; BILL GARDINER, Director of the Idaho State Police, *in his individual capacity*; CANYON COUNTY; CITY OF CALDWELL; CITY OF NAMPA; and JOHN DOES 1-20, *in their individual capacities,*

Defendants.

COME NOW Defendants City of Caldwell, City of Nampa, Rex Ingram, and Joe Huff (collectively, the "City Defendants"), and hereby submit their Reply in support of their Motion to Dismiss Plaintiffs' Complaint.

## I. INTRODUCTION

Plaintiffs' opposition does not cure the Complaint's central pleading defect. The Complaint labels both Chiefs as participants in planning and execution who directed subordinates, but it does not allege plausible, nonconclusory facts identifying what either Chief personally did, directed, agreed to, or knowingly approved that violated Plaintiffs' constitutional rights. Nor does it plead facts showing that either City adopted a policy, custom, or final-policymaker decision that was the moving force behind a constitutional injury.

The Complaint instead describes a large, multi-agency operation and attributes conduct to "Defendants," "officers," or unnamed personnel. Those allegations may describe interagency coordination in a federal warrant execution, but they do not plausibly establish that either Chief agreed to use the warrant as a pretext for suspicionless immigration enforcement, directed any officer to detain Plaintiffs beyond the scope of a lawful warrant-related operation, personally participated in an alleged deprivation, or adopted a subordinate's unconstitutional decision and its basis.

# II. ARGUMENT

## A. The Complaint Does Not Plausibly Allege a Fourth Amendment Violation by Either Chief.

A complaint must plead sufficient factual matter to permit a reasonable inference that each defendant is liable for the alleged misconduct; labels, conclusions, and a formulaic recitation of elements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs characterize the operation as a preplanned, suspicionless dragnet. But the Complaint also acknowledges that the operation accompanied execution of a federal search warrant for alleged illegal gambling at La Catedral, and that related arrest warrants had issued. The question is not whether any person at the operation acted unlawfully, but whether the Complaint pleads facts showing that either Chief personally directed, participated in, agreed to, or knowingly approved conduct that violated Plaintiffs' Fourth Amendment rights. It does not.

### 1. The Complaint Does Not Plead That Either Chief Directed a Detention Beyond the Warrant-Related Operation.

A warrant to search for contraband provides limited authority to detain occupants of the premises while a proper search is conducted. *Michigan v. Summers*, 452 U.S. 692, 705 (1981). That authority is confined to persons within the immediate vicinity of the premises being searched and remains tied to the interests supporting a safe and efficient search. *Bailey v. United States*, 568 U.S. 186, 193–201 (2013).

Although the Complaint collectively alleges that Ingram and Huff, or persons under their direction, participated in detention and immigration processing, it supplies no nonconclusory facts showing that either Chief personally directed detention outside the immediate search area,

prolonged a particular plaintiff's detention, or used the search as a pretext for an unrelated objective.

Nor does Plaintiffs' reliance on the alleged "preplanned" nature of the detention help. Their most specific allegation tying the City SWAT units to the alleged immigration purpose are that an operational plan for the ISP, County, Caldwell, and Nampa SWAT teams provided that they would "detain attendees; and then move detainees through the 'processing area,'" which Plaintiffs allege was the ICE Tent. Dkt. No. 1, ¶¶ 177-78.

But these paragraphs only refer to unnamed SWAT team commanders and team leaders, not to Huff or Ingram. Neither Chief is alleged to have attended the October 14, 18, or 19 planning meetings. The Complaint also infers that the SWAT commanders knew the processing area was an ICE immigration tent but never provides facts supporting this inference. And Paragraph 181 alleges that "[p]art of the plan for the Raid also included coordinating with DHS to bring the ICE Tent," again attributing that coordination to unspecified participants, not to either Chief.

### 2. The Alleged Duration and Manner of Detention Do Not Plead Personal Liability by Either Chief.

A detention incident to a search may, in appropriate circumstances, last for the duration of the search and involve objectively reasonable force. *Muehler v. Mena*, 544 U.S. 93, 98–100 (2005). *See also United States v. Sharpe*, 470 U.S. 675, 685-86 (1985).

The Complaint alleges that detentions lasted approximately four hours and that officers used zip-ties, restricted movement, and controlled access to amenities. But it does not allege that either Chief personally restrained a plaintiff, ordered a particular restraint, denied a particular necessity, prolonged a plaintiff's detention, or knew of and disregarded a particular unconstitutional restraint.

The Complaint's generalized allegations against "officers from Defendants' agencies" therefore do not state a Fourth Amendment claim against either Chief. See *Iqbal*, 556 U.S. at 676–77 (requiring sufficient factual matter as to each defendant's own actions).

**3. *Perez Cruz* Does Not Supply the Missing City-Defendant-Specific Facts.**

Plaintiffs' reliance on *Perez Cruz v. Barr*, 926 F.3d 1128 (9th Cir. 2019), does not cure the pleading deficiency. *Perez Cruz* involved direct evidence that ICE had planned to use a records-search warrant to target, detain, interrogate, and arrest large numbers of workers for immigration purposes. The record included agency planning documents identifying mass immigration arrests as the operation's central purpose.

The Complaint alleges nothing comparable as to either Chief. It identifies no City-specific statement, instruction, planning document, or communication showing that Chief Ingram or Chief Huff personally joined a plan to use the warrant execution as a pretext for suspicionless immigration detention or interrogation.

**B. Plaintiffs Do Not Plead a City-Defendant-Specific Agreement.**

A § 1983 conspiracy requires an agreement or meeting of the minds to violate constitutional rights, concerted action to accomplish that unlawful objective, and an actual deprivation. *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012). Each participant need not know every detail of a plan, but each must share its common unlawful objective.

Allegations of Task Force membership, planning meetings, deployment of personnel, post-operation correspondence, and public statements are consistent with lawful interagency coordination in executing a warrant. The pleading identifies no City-specific act or commission from which the Court can reasonably infer that either Chief agreed to conduct unlawful detentions,

to engage in immigration enforcement without lawful grounds, or to discriminate based on race or ethnicity.

Nor does later acknowledgment of assistance by an ICE official establish an earlier agreement by either Chief to violate constitutional rights.

### C. The Equal-Protection and Civil-Rights-Conspiracy Claims Rest on Speculation and Group Pleading.

#### 1. The Complaint Does Not Plead Discriminatory Purpose by Either Chief.

Disparate impact alone does not establish purposeful discrimination. A plaintiff must plead facts supporting an inference that the relevant decisionmaker selected or reaffirmed a course of action because of, rather than merely in spite of, its adverse effects on an identifiable group. *Iqbal*, 556 U.S. at 676–77.

Plaintiffs rely on alleged statements by other officials, the alleged predominance of Latino attendees at La Catedral, and Chief Ingram's post-event reference to a "cartel." But the Complaint does not allege that Chief Huff made a discriminatory statement, adopted a race-based criterion, or treated any plaintiff differently because of race or ethnicity. Nor does it allege facts plausibly showing that Chief Ingram's post-event statement reflected a race-based directive, agreement, or policy made before or during the operation.

Although the Complaint alleges that some white-appearing attendees received more favorable treatment than Latino-appearing attendees, it identifies no City-Defendant-specific facts tying that alleged disparity to either Chief. The asserted comparison does not identify the officers involved, their agencies, or whether either Chief knew of the respective incidents.

### 2. The Complaint Does Not Plead a Plausible § 1985(3) or § 1986 Claim Against the City Defendants.

A § 1985(3) claim requires, among other things, a conspiracy motivated by class-based, invidiously discriminatory animus. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Task Force participation and planning meetings, without more, do not plausibly plead that either Chief agreed to an unlawful ethnic-targeting objective or committed an act in furtherance of such an agreement.

Plaintiffs invoke collective-pleading principles from *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 672–74 (9th Cir. 2018). But *Silingo* permitted collective allegations only where multiple defendants were alleged to have engaged in precisely the same conduct. This case is materially different: Plaintiffs identify City, county, state, and federal entities, hundreds of officers with differing roles, and varied conduct. A collective allegation that "Defendants" or "officers" acted does not identify the conduct of each City Defendant or plausibly show that either Chief shared an unlawful objective.

The § 1986 claim fails because it depends on a viable § 1985 conspiracy. *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985). It also fails independently because the Complaint does not allege facts showing that either Chief knew of a § 1985 conspiracy and had a realistic opportunity to prevent it. The assertion that Defendants "could have intervened" is a legal conclusion, not a City-Defendant-specific factual allegation.

### 3. Plaintiffs Do Not Plead Municipal Liability Against Either City.

A municipality is liable under § 1983 only when its policy, custom, or decision by an official with final policymaking authority causes the constitutional injury. It may not be held vicariously liable for the acts of its employees. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–84 (1986).

**4. No Policy or Custom.**

The Complaint does not identify a formal policy either City requiring unlawful detentions, ethnicity-based enforcement, immigration-status screening, or participation in unlawful warrant executions. Nor does it plead a longstanding, persistent, and widespread custom of either City. To the contrary, Plaintiffs allege that the La Catedral operation was atypical and without precedent in recent Idaho history.

**5. No Well-Pled Final-Policymaker Decision.**

A single decision can constitute municipal policy only when an official with final policymaking authority makes a deliberate choice to follow an unconstitutional course of action within the official's authority. *Pembaur*, 475 U.S. at 481–84.

Plaintiffs' contrary assertions that the Chiefs were involved in planning or execution are conclusory labels. The Complaint does not identify a particular decision by either Chief to detain all attendees unlawfully, require immigration screening, impose unconstitutional restraints, deny necessities, or discriminate based on ethnicity. Plaintiffs allege only Task Force participation, collectively pleaded involvement in planning and execution, and after the operation, Chief Ingram's public statements and Chief Huff's inclusion on emails—none of which reflects such a deliberate choice.

**6. No Ratification.**

Ratification requires a final policymaker's affirmative approval of both a subordinate's particular decision and the unconstitutional basis for that decision. *Christie v. Iopa*, 176 F.3d 1231, 1239–40 (9th Cir. 1999); *Gillette v. Delmore*, 979 F.2d 1342, 1347–49 (9th Cir. 1992).

Post-event statements thanking participants, defending a law-enforcement operation, or disagreeing with public characterizations of the operation do not establish ratification. Nor does the Complaint plead facts showing that either City's final policymaker affirmatively approved a subordinate's decision and its unconstitutional basis.

The Complaint alleges that officers from at least Caldwell PD zip-tied children. But it does not identify the officers, identify which named plaintiff was restrained by a Caldwell officer, allege facts showing that the particular restraint was unconstitutional under the circumstances, or plead that Chief Ingram directed, knew of, or affirmatively approved that restraint and its unconstitutional basis.

**7. No Municipal Causation.**

Municipal liability requires that the policy, custom, or final-policymaker decision be the moving force behind the constitutional injury. The Complaint's undifferentiated narrative spanning federal, state, county, and municipal actors does not plead that a policy or decision of either City caused any alleged deprivation.

**D. The Complaint's Group Pleading Does Not Give the City Defendants Fair Notice.**

Rule 8 requires a short and plain statement that gives each defendant fair notice of the claim and the grounds on which it rests. *Iqbal*, 556 U.S. at 678. The Complaint repeatedly attributes conduct to "Defendants," "State Defendants," "officers," or "officers from Defendants' agencies" without identifying which conduct is attributable to which City Defendant.

The problem is particularly acute as to the individual Chiefs. Although Plaintiffs allege that unnamed Caldwell officers restrained children, that allegation does not identify the officer, connect the conduct to either Chief, or establish personal participation, policymaker liability,

ratification, or municipal causation. It instead seeks to impose liability based on generalized allegations that their agencies participated in the operation.

That is insufficient to plead personal liability, an unlawful agreement, discriminatory intent, ratification, or municipal causation. The claims should be dismissed. If the Court grants leave to amend, Plaintiffs should be required to plead defendant-specific facts identifying the conduct allegedly undertaken by each City Defendant and the factual basis for each asserted theory.

### E. Qualified Immunity Independently Bars Damages Claims Against Chiefs Ingram and Huff.

Qualified immunity applies at the pleading stage when the allegations do not establish a constitutional violation or do not show that the asserted right was clearly established at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The clearly established inquiry must be particularized to the facts and official conduct at issue; existing precedent must place the constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011).

The relevant question is not whether some alleged conduct by some officer could have been unconstitutional in the abstract. It is whether existing precedent placed beyond debate that the particular conduct plausibly alleged against each Chief violated the Constitution. The Complaint does not identify what either Chief personally did to direct a detention beyond the lawful scope of the warrant-related operation, to require immigration questioning, to impose unreasonable restraints, or to discriminate based on race or ethnicity.

*Perez Cruz* did not clearly establish personal liability for every local official who participated in a coordinated operation that included immigration enforcement. It addressed ICE agents' detention-and-interrogation program on a developed record containing direct evidence of

a preexisting plan to use a records warrant to effect mass immigration arrests. It did not address the personal liability of municipal police chiefs for assigning personnel to assist with a warrant execution, nor did it hold that task-force membership, general operational planning, or later communications establish personal liability for another agency's detention or immigration-processing decisions.

Plaintiffs identify no controlling authority clearly establishing liability on the facts pleaded as to Chief Ingram or Chief Huff. The damages claims against them should therefore be dismissed on qualified-immunity grounds.

**III.**

**CONCLUSION**

The City Defendants' Memorandum in Support of this Motion, the Court should dismiss all claims asserted against the City of Caldwell, the City of Nampa, Chief Rex Ingram, and Chief Joe Huff.

DATED this 13th day of October, 2026.

CASTLETON LAW PLLC

By /s/ *Bruce J. Castleton*
Bruce J. Castleton, Of the Firm
Attorney for Defendants City of Caldwell, City of Nampa, Ingram and Huff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 13th day of October, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Jenn Rolnick Borchetta jborchetta@aclu.org
Allison Frankel afrankel@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004
*Attorneys for Plaintiffs*

Jorge Castillo jorgecastillo@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th St NW
Washington , D.C. 20005
*Attorney for Plaintiffs*

Emma Andersson eandersson@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
New York, NY 10004
*Attorney for Plaintiffs*

Paul Southwick psouthwick@acluidaho.org
Emily Croston ecroston@acluidaho.org
ACLU OF IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701
*Attorney for Plaintiffs*

Wendy J. Olson wendy.olson@stoel.com
STOEL RIVES LLP
101 S. Capitol Blvd., Suite 1900
Boise, ID. 83702
*Attorney for Plaintiffs*

***/s/ Bruce J. Castleton***
BRUCE J. CASTLETON